# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RICK M.,

      Plaintiff,

  v.

ANDREW SAUL,

      Defendant.

No. 20 CV 4369

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Rick M.[1] appeals from the Social Security Commissioner's decision denying him disability insurance benefits. For the reasons explained below, the Commissioner's decision is affirmed.

## I. Legal Standard

Judicial review of social security decisions is limited. I must decide whether the agency "applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhard*, 425 F.3d 345, 351 (7th Cir. 2005)).[2] I must also decide whether the administrative law judge's factual findings are supported by substantial evidence. *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019). Substantial evidence is a low bar and means "such relevant evidence as a

---

[1] I refer to plaintiff by his first name and the first initial of his last name to comply with Internal Operating Procedure 22.

[2] Only a "final decision" made by the Social Security Commissioner is subject to judicial review. 42 U.S.C. § 405(g). A ruling by the Appeals Council, as is the case here, is considered a final decision. 20 C.F.R. § 416.1481; *see also* 42 U.S.C. § 405(a) (the Commissioner has broad authority to create rules and regulations to enact social security laws).

reasonable mind might accept as adequate to support a conclusion." *Id*. I analyze whether the ALJ built an "accurate and logical bridge" between the evidence and the conclusion, *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)), and whether the ALJ's analysis had "enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). An ALJ's credibility findings are given special deference and will only be overturned if "patently wrong." *Apke v. Saul*, 817 Fed. App'x. 252, 257 (7th Cir. 2020) (citing *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). I can affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g).[3]

**II.    Facts**

Rick M. suffered a stroke in February 2012. [9-1] at 324.[4] Five years later, he applied for social security disability benefits. [9-1] at 116. At a state-ordered physical examination, Rick M. said that he had only fifty percent strength in his right arm and leg, and that he suffered from anxiety. [9-2] at 20, 23. The physical examiner found that plaintiff had mild difficulty with hand and finger manipulation, reduced grip strength, and some weakness in his right leg. [9-2] at 22, 27. A psychological consultative examiner found no significant memory problems but noted that

---

[3] The government filed its brief as a memorandum in support of a motion for summary judgment. [16] at 1. Although styled as a motion for summary judgment, I treat the filing as an appellate response brief. "Social Security appeals are exempt from the typical summary-judgment procedures." *Davenport v. Berryhill*, 721 Fed. App'x. 524, 527 (7th Cir. 2018) (citing *Milton v. Harris*, 616 F.2d 968, 975 (7th Cir. 1980)).

[4] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of documents.

plaintiff's symptoms were consistent with moderate depression and anxiety. [9-2] at 18. The Social Security Administration denied Rick M.'s initial claim, and he requested reconsideration. [9-1] at 124, 127. While it noted that plaintiff's work functions were limited, the agency denied Rick M.'s application because it found that plaintiff could perform medium work. [9-1] at 138. Plaintiff appealed the denial to an ALJ, and plaintiff and a vocational expert testified at a hearing. [9-1] at 88–89, 154. The ALJ denied the claim. [9-1] at 82. The ALJ determined that Rick M. was capable of sedentary work, including his past relevant work as a technical engineer, and was not disabled. [9-1] at 74, 81–82.[5]

The ALJ focused on plaintiff's impairments from the beginning of his claimed disability—February 29, 2012—through the date of the ALJ's decision. [9-1] at 69–70. To decide whether Rick M. was disabled, the ALJ scrutinized plaintiff's claim under the agency's five-step process. [9-1] at 70–81. The five steps ask: 1) whether the claimant is currently employed; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; 4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and 5)

---

[5] For more than eleven years before his stroke, plaintiff worked as a technical engineer designing building systems. [9-1] at 279, 284, 317. In disability determinations, the Social Security Administration analyzes a claimant's past occupation using the *Dictionary of Occupational Titles*, a Department of Labor resource. *See* 20 C.F.R. § 404.1560(b). Here, the vocational expert testified that Rick M.'s job was that of a civil drafter, also known as a technical engineering specialist. [9-1] at 110–11; *see* U.S. Dep't of Labor, 1 *Dictionary of Occupational Titles* 20 (4th ed. 1991),
https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT01A.

3

whether the claimant is capable of performing any work in the national economy. 20 C.F.R. § 404.1520.[6]

At step one, the ALJ found that Rick M. was not gainfully employed. [9-1] at 71. At step two, the ALJ found that plaintiff had two severe impairments: a history of strokes with residuals including right hemiparesis, and obesity. [9-1] at 72. The ALJ also found that Rick M. had the non-severe physical impairments of hypertension, hypertriglyceridemia, diabetes mellitus, and dyslipidemia. *Id*. Finally, the ALJ found that Rick M. had two non-severe mental impairments: depression and anxiety. *Id*.

To decide whether and how plaintiff's depression and anxiety limited his ability to work, the ALJ looked at four areas of mental functioning: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. [9-1] at 72–74.[7] The ALJ found that plaintiff had mild limitations in all four of these areas. *Id*. Plaintiff said he had memory problems, but the ALJ found only a mild limitation in the area of understanding, remembering, or applying information because Rick M. followed instructions and procedures in medical examinations, his psychological consultative examiner found no memory issues, and because Rick M. was able to

---

[6] If the agency cannot determine disability at a step, it goes on to the next step. 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of proving disability at steps one through four; the burden of proof shifts to the Commissioner at step five. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

[7] Known as "paragraph B" criteria, the four areas of mental functioning are found at 20 C.F.R. § 404, Subpt. P, App. 1. *See* [9-1] at 72. !

4

drive, shop, and negotiate with tenants regarding unpaid rents. [9-1] at 72–73, 271, 273; [9-2] at 16–18, 182. Plaintiff had only a mild limitation in interacting with others, the ALJ found, because Rick M. successfully interacted when seeing others, worked as a public-facing golf course ranger, and had been pleasant and cooperative during visits with his doctors. [9-1] at 73, 272–74, 368; [9-2] at 22, 54; [9-3] at 40. In the area of concentrating, persisting, or maintaining pace, the ALJ also found only a mild limitation. [9-1] at 73. Plaintiff said he struggled to focus and concentrate. [9-1] at 268, 273; [9-2] at 16. But Rick M. successfully lived alone, took care of his dog, managed rental property, and traveled internationally. [9-1] at 269–271, 273; [9-2] at 182. During medical examinations plaintiff had concentrated and shown a normal attention span. [9-1] at 73; [9-2] at 197. The ALJ found only a mild limitation in adapting or managing oneself because plaintiff had not sought out a mental health specialist or a prescription for psychoactive medications, and because Rick M.'s activities indicated an ability to manage stress. [9-1] at 73, 269–72, 313. In sum, the ALJ found that plaintiff's depression and anxiety did not cause "more than minimal limitation in the claimant's ability to perform basic mental work activities." [9-1] at 72.

At step three, the ALJ decided that plaintiff's impairments did not meet the criteria for a disabling impairment. [9-1] at 74; *see* 20 C.F.R. § 416.920(a)(4)(iii). Because plaintiff's impairments were severe under step two (because they had more than a minimal effect on his ability to do basic work) but were not conclusively disabling disorders under step three, the ALJ determined Rick M.'s "residual

5

functional capacity" in order to complete steps four and five. *See* 20 C.F.R. § 416.920(a)(4)(iv). A claimant's RFC represents the most physical and mental activity the claimant can do in a work setting—eight hours a day, five days a week—despite his medical impairments. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *1 (Jul. 2, 1996). This is a broad assessment that considers: 1) all the relevant evidence, medical and non-medical; 2) all the claimant's limitations, including non-severe ones; and 3) the claimant's physical and nonphysical limitations. *Id.*

The ALJ began the RFC analysis with Rick M.'s symptoms. [9-1] at 74–75. Plaintiff testified that he was unable to work because he had lost much of the use of the right side of his body, had limited strength in his right hand, struggled to write with his left hand, could remain on his feet for only limited periods of time, had difficulty doing routine physical movements, lost his balance, and was depressed and anxious. [9-1] at 75, 100–02. While Rick M. alleged that these symptoms greatly decreased his ability to work, the ALJ found that the medical record did not line up with that assessment because plaintiff's limitations were not as intense or persistent as plaintiff had described. *Id.*

Primary care and hospital records showed that Rick M. had suffered strokes in 2012 and in 2019. [9-1] at 329; [9-3] at 4. At a primary care examination four years after his initial stroke, Rick M.'s doctor found only mild right hemiparesis, and plaintiff described his right-side weakness as minimal. [9-1] at 329–330. Plaintiff came to the emergency room a few months later, complaining of dizziness, weakness,

6

headaches, and confusion. [9-1] at 424–27. Tests for additional cardiac or cardiovascular events were negative, and plaintiff was tentatively diagnosed with hypotension causing hypoperfusion. [9-1] at 338–39, 351–53, 364–68. Upon leaving the hospital, Rick M. was observed to have "good symmetric" strength in his arms and legs and only mild difficulty with his gait. [9-1] at 431. At a state-ordered internal medicine consultation in 2017, Rick M. said that he had only fifty percent strength left in his right arm and leg, but also reported that he could lift twenty pounds with his right hand, climb two flights of stairs, and take care of himself independently. [9-2] at 20–21. The examining doctor found that plaintiff could walk greater than fifty feet without support, had eighty percent strength on his right side, and had only mild problems with right side tasks involving his hands and fingers. [9-1] at 22, 27. Rick M. returned to the emergency room in 2019, and an MRI showed that he had suffered another stroke. [9-3] at 4, 15. Plaintiff's doctors noted that he may have had untreated type two diabetes. [9-2] at 186. Repeated physical examinations showed no new weakness, and that Rick M. had only a slight loss of strength in his right arm and leg. [9-2] at 184; [9-3] at 40, 42.

At his psychological consultative examination, plaintiff described his mood as unstable and said that he was experiencing symptoms of anxiety and depression, including panic attacks. [9-1] at 76; [9-2] at 16. The examiner found that Rick M.'s symptoms and history appeared commensurate with moderate depression and anxiety. [9-2] at 18. But at the same examination plaintiff was oriented to his surroundings, his memory appeared intact, and he "displayed appropriate thought

7

processes." [9-2] at 16–18. Furthermore, at both his internal medicine consultative examination and a subsequent hospital visit, plaintiff denied having either depression or anxiety. [9-2] at 22, 44; [9-3] at 5. When Rick M. was hospitalized in March 2019, he identified confrontations with his tenants over rent as a chronic stressor. [9-2] at 182. Plaintiff's doctors indicated that he could benefit from stress management or medication, but they also found plaintiff was without acute mood symptoms at the time of examination. [9-2] at 186. Plaintiff testified that he took anxiety medication, but no anxiety prescriptions were included in a list from Rick M.'s most recent visit to a doctor. [9-2] at 39–42. Rick M. lived alone and managed his own care, drove, took a trip out of the country, and managed rental properties. [9-2] at 182.

Based on this record, the ALJ concluded that plaintiff's impairments of stroke, history of stroke including hemiparesis, and obesity were established by the medical evidence. [9-1] at 80. The ALJ found that plaintiff had the following RFC: he could perform sedentary work; could lift and carry weights of ten pounds occasionally, stand or walk for two hours of each work day; never climb ladders, ropes, or scaffolds; climb ramps or stairs no more than occasionally; had to avoid regular exposure to certain hazards; and was limited in the use of his right hand. [9-1] at 74, 80–81. The ALJ did not include any limitations in the RFC related to Rick M.'s mental impairments. *Id.*

At step four, the ALJ compared plaintiff's RFC with the requirements of Rick M.'s past relevant work. [9-1] at 71, 81. At the hearing, the ALJ asked a vocational expert four hypothetical questions to determine whether plaintiff could perform work

8

in the national economy. [9-1] at 109–12. The ALJ asked the vocational expert to focus on plaintiff's past relevant occupation as a technical engineer. *Id*. In the first hypothetical, the ALJ asked the vocational expert whether an individual of the same age and education as the claimant who could perform medium work, was limited to frequent handling and fingering on the right, could only occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and could only have limited exposure to some hazards would be able to perform the job of technical engineer. [9-1] at 111–12. The vocational expert testified that such an individual could perform the work of a technical engineer. [9-1] at 112. The second hypothetical restricted the individual to sedentary work: the vocational expert testified that such a person would still be able to perform plaintiff's past relevant work. *Id*. In the third hypothetical, the individual was able to complete sedentary work, but the ALJ added that they would be limited to simple and routine tasks and simple, work-related decisions. *Id*. The vocational expert found that such an individual would not be able perform the work of a technical engineer. *Id*. In the fourth and final hypothetical, the ALJ asked the vocational expert to assess whether an unskilled individual could perform plaintiff's past relevant work, and the vocational expert found that such an individual would have no transferable skills. *Id*. Based on the vocational expert's testimony, the ALJ at step four found that plaintiff had the RFC required to perform his past work as a technical engineer, and on that basis determined that Rick M. was not disabled and thus ineligible for disability benefits. [9-1] at 81.

Plaintiff requested review of the ALJ's decision by the Social Security Appeals Council, but the Council denied plaintiff's request. [9-1] at 5. The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner. *Id*. Rick M. then filed this lawsuit in federal court, seeking judicial review of the Appeals Council's decision. [1].

III. **Analysis**

Plaintiff's central argument is a legal one: that having found mild mental limitations at step two of the disability analysis, the ALJ was required to "account for" those limits in his RFC finding. [10] at 3. The ALJ's RFC was inadequate, plaintiff argues, because it included only physical limitations, did not consider the combined effect of plaintiff's impairments, and failed to explain why no mental limitations had been found. [10] at 3, 6; [17] at 3. Plaintiff contends that the omission of mental limits at the RFC stage was legal error because the issue was whether Rick M. could return to the highly skilled occupation of a technical engineer. [10] at 5–7.[8] Plaintiff also argues that the RFC was defective because the ALJ's hypothetical questions to the vocational expert did not include plaintiff's mental limitations. [10] at 3–4, 6–7.

In the agency's five-step disability analysis, there is no one-to-one relationship between impairment findings made at step two and the functional limitations determined in an RFC. *See* 20 C.F.R. § 404.1545(a)(1) ("impairment(s), and any

---

[8] According to the *Dictionary of Occupational Titles*, Rick M.'s past relevant work as a technical engineer required a high level of reasoning ability. *See* U.S. Dep't of Labor, 1 *Dictionary of Occupational Titles* 20 (4th ed. 1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT01A (indicating that the Civil Drafter position requires a fourth level reasoning ability).

related symptoms, such as pain, *may* cause physical and mental limitations that affect what you can do in a work setting") (emphasis added); SSR 96-8P, 1996 WL 374184, at *1 (1996) (distinguishing between a claimant's "functional limitations and restrictions" and their "medically determinable impairment or combination of impairments"). A finding of impairment at step two will not necessarily equate to any RFC limitation. *See Felts v. Saul*, 797 Fed. App'x 266, 268–70 (7th Cir. 2019) (affirming the Commissioner where an ALJ found mild mental limitations at step two but no mental limits in a claimant's RFC). When an ALJ determines an RFC for an individual with more than one impairment, she must "consider" all medically determinable impairments, severe or otherwise. 20 C.F.R. § 404.1545(a)(2); *see* 20 C.F.R. 404.1520(e). "'[B]oth the hypothetical posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). But "'[t]here is no error [in an RFC assessment] when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'" *Best v. Berryhill*, 730 Fed. App'x 380, 382 (7th Cir. 2018) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).

Here, the ALJ considered all of Rick M.'s medically determinable impairments as part of his RFC analysis. The ALJ began by taking stock of plaintiff's reported symptoms, including those related to depression, anxiety, and panic attacks. [9-1] at 74–77. The ALJ also noted plaintiff's diagnosis of moderate depression and anxiety.

11

[9-1] at 77. But the ALJ found specific reasons to discredit this evidence. [9-1] at 75–79. For instance, during his psychological consultative examination, Rick M. had shown normal memory and orientation processes and was found to be operating within normal cognitive limits. [9-1] at 77. The ALJ found no evidence that plaintiff was taking medication to treat anxiety. [9-1] at 76. In several examinations, Rick M. reported no symptoms of depression or anxiety to his doctors, even when those doctors expressly asked about plaintiff's mental health. *Id.* The ALJ also found that Rick M. was able to live by himself, travel to Aruba, and directly manage a rental property. [9-1] at 79. After weighing this evidence together with the medical record of physical impairments, the ALJ found that there was "very little in the medical record to support allegations as severe as those described." [9-1] at 75. Having reviewed plaintiff's medical record, the ALJ found that plaintiff had three impairments at the RFC stage: 1) stroke; 2) history of stroke with residuals including right-sided hemiparesis; and 3) obesity. [9-1] at 80. Based on those impairments, the ALJ found that Rick M. was capable of sedentary work within various physical restrictions. [9-1] at 80–81.

The ALJ could have been more explicit about why he omitted mental limits from Rick M.'s RFC. But the ALJ offered specific reasons—contrary evidence—that explain why plaintiff's medical record did not support incorporating any mental limitations into the RFC. That was enough to build the necessary "accurate and logical bridge" between the minimal evidence of mental impairment in this case and the conclusion that Rick M.'s RFC does not include mental limitations. *Peeters v.*

*Saul*, 975 F.3d 639, 641 (7th Cir. 2020); *see Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015). True, at step two the ALJ found mild mental limitations, and mild is not none. *See* 20 C.F.R. § 404.1520a(c)(4) (describing the five-point scale the agency uses to rate the degree of functional limitation associated with mental impairments). Plaintiff is also correct that the ALJ was required at the RFC stage to consider limitations imposed by all of an individual's non-severe impairments. [10] at 4; 20 C.F.R. § 404.1545(a)(2)–(3). But the ALJ was required to *consider* those limitations, not necessarily to include them in his finding of plaintiff's RFC. *Id.*; *see Felts v. Saul*, 797 Fed. App'x 266, 268–70 (7th Cir. 2019). By discussing the evidence, including as it related to Rick M.'s mental health history, and concluding that his limitations were not as severe as Rick M. described, the ALJ considered the limitations but found that they did not rise to the level of a functional limitation in the RFC assessment.

Plaintiff rightly points out that the regulations for both step two and the RFC assessment require an ALJ to determine functional limitations. [17] at 1. *Compare* 20 C.F.R. § 404.1520a (requiring an ALJ to "rate the degree of functional limitation" resulting from an impairment at step two), *with* 20 C.F.R. § 404.1545(c) (requiring an ALJ to "assess the nature and extent of your mental limitations and restrictions" to determine residual functional capacity). Despite both using the word "functional," however, the step two mental impairment and RFC analyses are distinct inquiries: they ask different questions. At step two an ALJ is required to assess the "functional consequences of mental disorder(s)" in order to decide whether an impairment is severe. 20 C.F.R. § 404.1520a(a)(2). At the RFC stage, the ALJ is determining

functional capacity. 20 C.F.R. § 404.1545(c). Mental functional limits found at step two must be considered during the RFC assessment, but those limits will not necessarily become limits within a claimant's RFC. 20 C.F.R. § 404.1545(c) ("A limited ability to carry out certain mental activities … *may* reduce your ability to do past work and other work.") (emphasis added); *see Felts v. Saul*, 797 Fed. App'x 266, 268–70 (7th Cir. 2019).

The ALJ's omission of Rick M.'s mild mental limitations from the RFC was not a legal error. The legal requirement was to incorporate those limitations supported by the medical record, *see Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019), and here the ALJ rejected evidence of mental limitations at the RFC stage because it was outweighed by contrary evidence.[9] Rick M.'s mild step-two mental limitations did not support a functional limitation, as explained by the ALJ when he emphasized the consultative psychological examination and other evidence that demonstrated Rick M.'s then-present mental capacity to perform sedentary work. [9-1] at 74–81.[10] Likewise, there is no error here because no doctor's opinion contained in the record indicates greater than mild mental limitations. *See Best v. Berryhill*, 730 Fed. App'x

---

[9] The ALJ's adequate engagement with the combined effects of plaintiff's impairments in this case distinguishes it from those cited by plaintiff. [17] at 4–5 (citing *Pamela J. B. v. Saul*, 2021 WL 963765 at *6 (N.D. Ill. Mar. 15, 2021); *Nam v. Saul*, 2020 WL 6781800, at *4–5 (N.D. Ill. Nov. 18, 2020); and *Paar v. Astrue*, 2012 WL 123596 at *13 (N.D. Ill. Nov. 8, 2020)).

[10] That the ALJ ultimately used the RFC to analyze Rick M.'s ability to perform the highly skilled work of a technical engineer does not alter the analysis. The RFC assessment is distinct from any particular occupation, and therefore the complexity of Rick M.'s past work was irrelevant to the ALJ's analysis of Rick M.'s RFC. *See* 20 C.F.R. § 404.1545(a)(4) (describing the RFC analysis as centered on the "physical, mental, sensory, and other requirements of work" in general).

380, 382 (7th Cir. 2018). Rick M. was diagnosed with moderate depression and anxiety by the psychological consultative examiner. [9-2] at 18. But a diagnosis is not synonymous with RFC limits, *see Best*, 730 Fed. App'x at 382, and neither the diagnosing doctor nor any other recommended limitations based on plaintiff's mental health impairments. [9-2] at 15–18, 22–23, 39–42, 44, 184–186; [9-3] at 5.

The ALJ's hypothetical question to the vocational expert included all of Rick M.'s functional limitations supported by the medical record. [9-1] at 110–12. Nothing more was required. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)) (affirming the Commissioner where a hypothetical question did not include limitations because "they were not supported by the medical record"). Although the ALJ considered Rick M.'s mild mental limitations, there was no medical record supporting a mental impairment as a limitation on his residual functional capacity, so the ALJ was not required to incorporate mental limitations into the hypotheticals to the vocational expert. Because the vocational expert's testimony was based on a "complete picture of [the] claimant's residual functional capacity," *Jelenik v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011), the ALJ's dispositive finding at step four—that Rick M. was not disabled because he could perform his relevant past work—was supported by substantial evidence. [9-1] at 81.

## IV. Conclusion

The Commissioner's motion for summary judgment [15] is granted and the decision is affirmed. The Clerk shall enter judgment in favor of defendant and terminate this case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 24, 2021